# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LISA QUEEN, | |
| *Plaintiff*, | Civil Action No. 1:25-cv-03797 (SLS) |
| v. | |
| DISTRICT OF COLUMBIA, | |
| *Defendant*. | |

## DEFENDANT DISTRICT OF COLUMBIA'S
## MOTION TO DISMISS THE COMPLAINT

Defendant District of Columbia (the District) respectfully moves to dismiss the

Complaint under Fed. R. Civ. P. 12(b)(6). A memorandum of points and authorities in support of

this motion, exhibits, and a proposed order are attached.

Date: December 5, 2025          Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Steven N. Rubenstein*
STEVEN N. RUBENSTEIN [1013094]
Chief, Civil Litigation Division Section V

*/s/ Madeline Ochi*
MADELINE OCHI [90030264]
Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
(202) 741-7657
Madeline.Ochi1@dc.gov

*Counsel for Defendant District of Columbia*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2025, I caused a copy of Defendant's Motion to

Dismiss the Complaint, exhibits, and proposed order attached thereto to be served by email and

by mail upon:

Lisa Queen
4000 Massachusetts Avenue, NW
Apt. 916
Washington, D.C. 20016
swift098@gmail.com

*Plaintiff pro se*

> /s/ Madeline Ochi
> MADELINE OCHI
> Assistant Attorney General

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LISA QUEEN,

      *Plaintiff*,

    v.

DISTRICT OF COLUMBIA,

      *Defendant*.

Civil Action No. 1:25-cv-03797 (SLS)

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS THE COMPLAINT</u>

### INTRODUCTION

Defendant District of Columbia (the District) submits this memorandum of points and authorities in support of its motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6). As set forth below, the Complaint should be dismissed because (1) Plaintiff states no viable claim under 42 U.S.C. § 1983 because she does not plausibly allege any underlying constitutional violation or municipal liability and; (2) the Court should decline supplemental jurisdiction over Plaintiff's other claims if it dismisses her federal claims, or, alternatively, Plaintiff fails to state any viable common law or District law claim.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 11, 2025, Plaintiff sued the District, alleging that she was assaulted on two separate occasions and that the Metropolitan Police Department (MPD) mishandled her reports on both occasions.

First, Plaintiff claims that, on October 29, 2023, she was assaulted by an individual named Larry Smith at or near her residence. According to Plaintiff, she "defended herself from

escalating threats and acts of aggression" and MPD officers "responded but failed to arrest the assailant," "falsified reports," and "falsely claimed [to have] interviewed Plaintiff." *See* Compl. ¶¶ 7–10. Related to that incident, Plaintiff stated "MPD has shown repeated discriminatory conduct toward Black citizens in Washington, DC," "[w]itnesses were biased and did not fully disclose facts," and she "lost employment as a result of the arrest and false reports." *See id.* ¶¶ 12–14.

Public docket entries in *United States v. Queen, Lisa RR*, 2023 CMD 007923, show that on October 29, 2023, an MPD officer was dispatched to 4000 Massachusetts Avenue NW for an assault with a dangerous weapon (knife). See Def.'s Ex. 1, *United States v. Queen, Lisa RR*, 2023 CMD 007923, Def.'s Ex. 2, Gerstein Affidavit at 1 (Gerstein Affidavit). Upon arriving at the scene, officers located the victim and witnesses in the lobby of the building who reported that the victim had been "approached by [Plaintiff], who began yelling at her before pulling a kitchen knife from her bag and began swinging it in [her] direction. The victim and other witnesses in the lobby were able to get [Plaintiff] away from the victim and stop the assault. The victim then stated that [Plaintiff] had gone back to the elevator." Def.'s Ex. 2, Gerstein Affidavit at 1. The officer spoke with Plaintiff who returned to the lobby "bleeding from the forehead . . . and was alleging . . . the victim's husband had spit on her the previous day and that she was trying to defend herself." *Id.* Plaintiff reported that "the injury was from being assaulted by the victim, [while] witnesses state[d] that it must have happened while the victim was defending herself." *Id.* Based on review of CCTV footage from the apartment building, MPD confirmed witnesses' statements and placed Plaintiff under arrest. *Id.* Plaintiff was arraigned on October 30, 2023 and ultimately entered a STET agreement, providing that if Plaintiff completed the terms of the agreement the government would enter *nolle prosequi* in the case. *See* Def.'s Ex. 1, *United States*

*v. Queen, Lisa RR*, 2023 CMD 007923. Plaintiff successfully completed the STET agreement and the case was dismissed on July 24, 2024. *Id.*

In a separate incident, occurring nearly two years later on July 18, 2025, Plaintiff claims that she was assaulted at Giant Food located at 3336 Wisconsin Avenue NW and that "MPD officers at the scene refused to take a report and threatened to summon a mental health crisis team if Plaintiff did not show ID and comply with barring requests." *See id.* ¶ 16. Plaintiff alleges that "MPD falsely stated they were conducting an investigation . . . [and] failed to adequately review body-worn camera footage or verify the assault." *See id.* ¶¶ 18–19.

Plaintiff brings the following claims against the District: violations of the Fourth and Fifth Amendment under § 1983 (Count I); violation of the equal protection clause under § 1983 (Count II); common law negligence (Count III); defamation and false light (Count IV); intentional infliction of emotional distress (Count V); and violations of D.C. Code § 5-117 03, D.C. Code § 5-113 01, D.C. Code § 2-1402 11, D.C. Code § 12-301, D.C. Code § 5-117 03, and D.C. Code § 12-309 (Count VI). *See* Compl. Plaintiff seeks $500,000.00 in compensatory damages. *Id.*

## STANDARD OF REVIEW

### I.    <u>Fed. R. Civ. P. 12(b)(6)</u>

Dismissal under Rule 12(b)(6) is appropriate when a party has failed to set forth "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has set forth a "two-pronged approach" for ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While a court generally must consider a plaintiff's factual allegations as true, the court may first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Once the Court has determined that the plaintiff has asserted "well-pleaded factual allegations," the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

On a motion to dismiss, courts may consider documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff but by the defendant. *See Patrick v. District of Columbia*, 126 F. Supp. 3d 132, 135–36 (D.D.C. 2015); *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011). Moreover, in deciding a motion to dismiss, a court may take judicial notice of public records from other proceedings. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)).

## ARGUMENT

### I. Plaintiff's Constitutional Claims All Lack Merit.

Plaintiff does not plausibly allege predicate constitutional violations or any basis for municipal liability. Accordingly, the Court should dismiss Plaintiff's constitutional claims for failure to state a plausible claim for relief under § 1983.

#### A. Plaintiff Fails to Plausibly Allege Municipal Liability Under § 1983.

To state a § 1983 claim against the District, Plaintiff must show that a District policy or custom was the "moving force behind the alleged constitutional violation." *Parker v. District of Columbia*, 850 F.2d 708, 714 (D.C. Cir. 1988). A municipality can only be "found liable under

4

§ 1983 where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Thus, "*[r]espondeat superior* or vicarious liability will not attach under § 1983" to a municipality. *Id.* at 385 (citing *Monell*, 436 U.S. at 694–95). Instead, a plaintiff must allege facts showing that the constitutional violation resulted from: (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker with the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker v. District of Columbia*, 326 F.3d 1302, 1306–07 (D.C. Cir. 2003).

Plaintiff does not identify what theory of municipal liability, if any, she pursues here, which itself warrants dismissal. *See* Compl.; *see also Givens v. Bowser*, 111 F.4th 117, 122 (D.C. Cir. 2024) (holding that a plaintiff must "plead the elements of the relevant type of municipal policy" because courts are "'unable to determine whether a plaintiff has provided plausible support for her claim when she does not plead those elements." (quoting *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (internal quotation marks omitted); *Blue*, 811 F.3d at 20 ("If the plaintiff fails to identify the type of municipal policy at issue, the court would be unable to determine, as required by *Iqbal*'s second step, whether the plaintiff had provided plausible support for her claim. Although the court could try to surmise which theory of municipal liability has the strongest support in the complaint, this is not our role."). But, under any theory, any claim Plaintiff purports to bring against the District under § 1983 fails.

*First*, Plaintiff does not identify any explicit District policy that violates the Constitution. For the October 29, 2023 incident, Plaintiff does not refer to any specific District policy. *See* Compl. For the July 18, 2025 incident, Plaintiff's only conceivable reference to a District policy is her bare allegation that MPD officers intended to bring in a mental health crisis team if Plaintiff did not show ID and comply with barring requests at the Giant Food. Compl. ¶ 16. But Plaintiff does not point to an actual District policy that violates the Constitution or explain how it violates the Constitution. *Id.* Accordingly, Plaintiff's allegations do not support a claim that any District policy explicitly violates the Constitution.

*Second*, Plaintiff does not plausibly allege that any final policymaker of the District took actions causing her purported injuries. *See Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75–76 (D.D.C. 2011) (noting that this analysis hinges on whether "the D.C. Code specifically grant[s] authority to [the alleged policymaker] to promulgate administrative rules or . . . policies and procedures" and whether their "discretionary decisions are constrained by policies not of that official's making"). Plaintiff refers to certain MPD officers ("Lieutenant Howden, Lt. Gavin, Vitahoe, and Cullens and Captain Haskis, Lieutenant Jennifer Barba and Detective Bowman") who she claims "continuously refused to talk to victim on more than on occasion," but Plaintiff does not point to specific actions taken by these officer that caused any claimed constitutional injuries. *See* Compl. ¶ 20; *see, e.g., Iqbal*, 556 U.S. at 683 ("Yet respondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind. His pleadings thus do not meet the standard necessary to comply with Rule 8."). More importantly, Plaintiff's references to certain mid-level MPD employees do not implicate decisions by District policymakers. *See Singletary v. District of Columbia*, 766 F.3d 66, 74 (D.C. Cir. 2014) (Parole Board's "authority to render final revocation decisions in individual cases"

6

was "insufficient to create municipal liability [because] the decisionmaker had [not] been granted final policymaking authority under D.C. law in the area of parole revocation"); *Fischer v. District of Columbia*, 2025 WL 894445 at *7 (Mar. 24, 2025) ("Without a clear assertion that a final policymaker deliberately adopted the challenged conduct as official municipal policy, the claim improperly attempts to impose liability based on the actions of individual MPD officers, which *Monell* and its progeny prohibit.").

*Third*, Plaintiff does not plausibly allege that any alleged unconstitutional conduct here is so persistent that it can be considered a custom of the District. "To clear this high hurdle," Plaintiff must allege "'practices so persistent and widespread as to practically have the force of law.'" *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)); *see also Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 40 (D.D.C. 2012) (granting the District's Rule 12(b)(6) motion because four other alleged incidents did not amount to a "persistent, pervasive practice of the city officials") (internal quotation marks omitted). Plaintiff asserts that "MPD has shown repeated discriminatory toward Black citizens in Washington, DC," Compl. ¶ 14, but fails to elaborate on how MPD's alleged actions in her case fit into a custom of particularized unconstitutional conduct. And Plaintiff's failure to identify a single other comparable instance where another individual underwent circumstances like her own is patently insufficient to state a claim based on a District custom. *See Banks v. Bowser*, No. 18-CV-2146 (TNM), 2019 WL 2161565, at *5 (D.D.C. May 17, 2019) ("naked allusions to a municipal policy are insufficient" to withstand motion to dismiss). Accordingly, Plaintiff cannot establish municipal liability through a custom theory.

*Finally*, Plaintiff fails to plausibly allege the District's deliberate indifference. The deliberate indifference standard for establishing a municipal policy is "an objective standard,

'determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, but did not act.'" *Harvey v. District of Columbia*, 798 F.3d 1042, 1053 (D.C. Cir. 2015) (quoting *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011)). It is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," *Connick*, 563 U.S. at 61 (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)), and "means that, [when] faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction," *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). Actual or constructive notice may be shown by demonstrating "[a] pattern of similar constitutional violations." *Connick*, 563 U.S. at 62. Here, Plaintiff fails to identify any purported deficiency in the District's training, or allege that the District was aware, in spite of this training, that Plaintiff's constitutional rights were being violated or that others faced the risk of analogous violations. *See Cherry v. District of Columbia*, 330 F. Supp. 3d 216, 226 (D.D.C. 2018) (holding that plaintiff had not pleaded sufficient factual content to plausibly show that the District was deliberately indifferent to an inadequacy in its training where plaintiff "did not specify a single incident that supposedly alerted the District to a problem"). In short, Plaintiff has not plausibly alleged that the District maintained a policy of deliberate indifference to the risk of constitutional violations. *See Roe v. Wilson*, 365 F. Supp. 3d 71, 83 (D.D.C. 2019) (one prior instance of unconstitutional misconduct could not alone "support a reasonable inference that [that type of] misconduct . . . was so widespread as to put the District on notice of the need to initiate training or take other measures to reduce the risk of future incidents"). She therefore fails to plausibly allege municipal liability under a deliberate indifference theory.

8

In sum, Plaintiff has not plausibly alleged any basis to hold the District liable for her claimed constitutional violations. Accordingly, she fails to state a claim under § 1983.

**B. <u>Plaintiff Fails to Plausibly Allege Predicate Constitutional Violations.</u>**

**1. Fourth Amendment**

Plaintiff states that she is bringing a claim under § 1983 for a violation of the Fourth Amendment. The District construes this claim to concern only the alleged October 29, 2023 incident that resulted in Plaintiff's arrest because Plaintiff's allegations about the July 18, 2025 incident do not implicate any search or seizure under the Fourth Amendment.

The Fourth Amendment prohibits arrests made without probable cause. *Bailey v. U.S. Marshal Service*, 584 F. Supp. 2d 128, 132 (D.D.C. 2008) (citing *Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006). An officer may arrest without a warrant "a person who he has probable cause to believe has committed or is about to commit [assault], and unless immediately arrested, may not be apprehended, may cause injury to others, or may tamper with, dispose of, or destroy evidence . . ." D.C. Code § 23-581. "Probable cause to arrest exists if a police officer either had firsthand knowledge or received his information from some person — normally the putative victim or an eyewitness — who it seems reasonable to believe is telling the truth." *Davis v. United States*, 759 A.2d 665, 670 (D.C. 2000). Here, Plaintiff's was arrested for assault with a dangerous weapon, *see* Def.'s Ex. 2, Gerstein Affidavit, and Plaintiff acknowledges that she engaged in the altercation on October 29, 2023 by "defend[ing] herself from escalating threats and acts of aggression." *See* Compl. ¶ 7. Plaintiff thus does not plausibly allege that the unnamed officers' conduct was not based on a reasonable, good faith belief that they had probable cause to arrest her. And public docket entries show that the arrest was made after witnesses and CCTV footage confirmed that Plaintiff pulled a knife on the victim and was the only aggressor. *See*

Def.'s Ex. 2, Gerstein Affidavit. Accordingly, Plaintiff fails to allege a plausible Fourth Amendment violation based on the October 2023 incident.

### 2. Fifth Amendment

The Fifth Amendment of the U.S. Constitution prohibits government officials from depriving any person of liberty or property without "due process of law." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). Plaintiff does not specify whether she intends to press substantive or procedural due process claims, but both fail.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) (citation and internal quotation marks omitted). Without a valid, protected interest, there can be no procedural due process violation. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.") (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). If a plaintiff can show the deprivation of a cognizable liberty or property interest, a court then considers "whether the procedures used by the Government in effecting the deprivation comport with due process." *Ralls Corp.*, 758 F.3d at 315. The Due Process Clause does not protect any particular outcome; instead, it merely ensures that the procedures that led to such an outcome are fair. *See Bishop v. Wood*, 426 U.S. 341, 350 (1976) ("The Due Process Clause . . . is not a guarantee against incorrect or ill-advised [] decisions."). Moreover, to successfully assert a procedural due process claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the due process violation resulted from an official municipal policy. *Atherton*, 567 F.3d at 691 ("Under § 1983 a municipality is liable not under principles of *respondeat superior,* but only for constitutional

10

torts arising from 'action pursuant to official municipal policy.'" (quoting *Triplett v. District of Columbia,* 108 F.3d 1450, 1453 (D.C. Cir. 1997)). "Once it is determined that due process applies, the question remains what process is due." *FDIC v. Mallen*, 486 U.S. 230, 240 (1988). The requirement for procedural due process "'is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews*, 424 U.S. at 334. "[I]dentification of the specific dictates of due process generally requires" courts to look at three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest." *Id.* at 335.

To start, Plaintiff does not articulate whether she asserts that she has been deprived of a protected property or liberty interest. *See* Compl.; *see also Prince v. District of Columbia*, 2024 WL 2077546, at *4 (D.D.C. 2024) ("The Court cannot discern what liberty, privacy, or property interest Prince would have in the accurate recording of the incident."). Plaintiff claims that MPD officers responded to the October 29, 2023 incident and alleges that they falsified reports by stating they did not know who assaulted Plaintiff and "[a] detective later falsely claimed he interviewed Plaintiff." See Compl. ¶ 9–10. Although a "police report omitting or misreporting key facts could be said to deprive a suspect of liberty if later used in efforts to charge or prosecute [her,]" Plaintiff does not allege that any key facts were misreported in this case and that these omissions led to her being charged or prosecuted. *See Prince*, 2024 WL 2077546, at *3 (citing *Brandt v. City of LaGrange*, 2015 WL 1542086, at *5 (E.D. Mo. 2015)). Here, officers reported that "[Plaintiff] claimed her injury was from being assaulted by the victim, witnesses state[d] that it must have happened while the victim was defending herself," and ultimately "CCTV footage from the apartment building confirmed and corroborated with the witnesses

11

statements." Def.'s Ex. 2, Gerstein Affidavit. Therefore, the report did identify who Plaintiff claimed injured her and Plaintiff's arrest was made based on witness statements and CCTV footage. Plaintiff does not allege how a detective claiming that he interviewed her deprived her of any constitutional right.

As for the July 18, 2025 incident, Plaintiff claims that, after following up with MPD, MPD took a report, although she believes they "falsely stated they were conducting an investigation" and she "later learned MPD leadership failed to adequately review body-worn camera footage or verify the assault." *See* Compl. ¶ 17–19. With respect to both incidents, any alleged failure by MPD to investigate a claim does not constitute a deprivation of a constitutional right. *See Prince*, 2024 WL 2077546, at *4 ("[Plaintiff's] suggestion that he was entitled to a police investigation into his claim of assault is [] unfounded. Courts have consistently held such assertions meritless."). Similarly, if Plaintiff maintains that any officer failed to comply with internal MPD policy in not reviewing BWC or completing any particular investigatory steps, that does not amount to a denial of due process. *Id.* at *3.

If Plaintiff intends to pursue a substantive due process claim, that, too, fails. In determining whether a plaintiff states a substantive due process claim, the United States Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225–226 (1985)). It is therefore important "to focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake and what the city allegedly did to deprive her . . . of that right." *Id.* Plaintiff does not elaborate on any particular right, dooming any conceivable substantive due process claim. What is more, Plaintiff

does not describe conduct that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see also Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001) (requirement that state action be sufficiently egregious to shock conscience "exists to differentiate substantive due process, which is intended only to protect against arbitrary government action, from local tort law"). The action most likely to rise to the "conscience-shocking level," is conduct intended to injure the plaintiff in a way unjustifiable by any government interest. *Fraternal Ord. of Police Dep't of Corr. Lab. Comm. v. Williams*, 375 F.3d 1141, 1145 (D.C. Cir. 2004) (quoting *Lewis*, 523 U.S. at 849). The D.C. Circuit's standard requires that "a plaintiff must at least show that state officials are guilty of grave unfairness in the discharge of their legal responsibilities." *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988)). That stringent standard is not met here.

### 3. Equal Protection Clause

To advance an equal protection claim, Plaintiff "must assert *facts* that support the allegation that the government intentionally treated [him or her] differently from others who were similarly situated . . . ." *Jones v. Nat'l Council on Disability*, 66 F. Supp. 3d 94 (D.D.C. 2014) (emphasis added), *aff'd*, No. 14–5244, 2015 WL 653308 (D.C. Cir. Feb. 5, 2015). The Supreme Court has "made clear that proof of [] discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003). Plaintiff does not plausibly allege any discriminatory intent based on her membership in a protected class, and so her equal protection claim fails.

What is more, "[e]ven at the motion to dismiss stage, a plaintiff alleging an equal protection violation must plead facts that establish that there is not any reasonable conceivable

state of facts that could provide a rational basis for the classification." *Hettinga v. United States*, 677 F.3d 471, 479 (D.C. Cir. 2012) (per curiam) (internal quotation marks omitted). "[T]he rational basis inquiry is highly deferential to the government," and "an equal protection claim fails under Rule 12(b)(6) if the complaint itself suggests a rational basis for the government action." *XP Vehicles, Inc. v. Dep't of Energy*, 118 F.Supp.3d 38, 76 (D.D.C. 2015) (internal quotation marks omitted). Moreover, the Supreme Court has emphasized that class-of-one claims are a distinctly poor fit for evaluating "state action" that "involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 603 (2008). In reviewing discretionary decisions, "the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted" and "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." *Id.* Plaintiff does not allege any facts plausibly showing that the District treated her differently from any other similarly situated person and Plaintiff thus fails to state an Equal Protection claim.

## II.    The Court Should Dismiss Any Other Claims (Which All Lack Merit) For Lack of Supplemental Jurisdiction.

If the Court dismisses Plaintiff's § 1983 claims, the Court will have to decide whether to retain supplemental jurisdiction over her District law claims. *See* 28 U.S.C. § 1367. In so deciding, the "court must first determine whether the state and federal claims derive from a common nucleus of operative fact." *Konah v. District of Columbia*, 815 F. Supp. 2d 61, 78 (D.D.C. 2011) (citing *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996)). If so, "[t]he court then must decide whether to exercise its

discretion to assert jurisdiction over the state claim." *Id.* at 78–79. In making this determination, the court must weigh factors of judicial economy, convenience, fairness, and comity. *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265–66 (D.C. Cir. 1995). "[C]ourts in this jurisdiction routinely decline to exercise supplemental jurisdiction over pendent common law claims after dismissing the § 1983 claims over which they possess original jurisdiction." *Buie v. District of Columbia*, No. CV 16-1920 (CKK), 2021 WL 4061142, at *21 (D.D.C. Sept. 7, 2021). Accordingly, if the Court dismisses Plaintiff's constitutional claims against the District, it should dismiss any remaining claims against it without prejudice. *Ning Ye v. Holder*, 667 F. Supp. 2d 103, 104 (D.D.C. 2009) (dismissing remaining state law claims against District defendant without prejudice for lack of supplemental jurisdiction).

Alternatively, if the Court considers Plaintiff's District law claims, they all fail. *First*, Plaintiff fails to state a negligence claim because any negligence claim is barred by the public duty doctrine. A claim of negligence requires a showing of "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010) (citing *Wash. Metro. Area Transit Auth. v. Ferguson,* 977 A.2d 375, 377 (D.C. 2009). The existence of a legal duty is an essential element and a plaintiff "must specify a negligent act and characterize the duty whose breach might have resulted in negligence liability." *Id.* (citing *District of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982)). A complaint alleging negligence may not rest on mere "conclusory assertions" as to the existence of any element of the claim, including duty. *Id.* (citing *White*, 442 A.2d at 162). Thus, the "plaintiff must allege facts which show that the defendant breached some legally imposed duty owed to the plaintiff." *Id.* Furthermore, "a plaintiff cannot seek to recover by 'dressing up the substance' of one claim,"

"in the 'garments' of another, here negligence." *Blair v. District of Columbia*, 190 A.3d 212, 222 (D.C. 2018) (quoting *Chinn v. District of Columbia*, 839 A.2d 701, 708 (D.C. 2003)). In other words, "[m]erely using the term negligence does 'not raise a cognizable claim of negligence.'" *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 916 (D.C. Cir. 2015) (quoting *Chinn*, 839 A.2d at 708). When a plaintiff alleges the "District negligently failed to protect [them] from harm," the first element of a negligence claim—duty—is governed by the public duty doctrine, under which the "government and its agents are under no general duty to provide public services, such as police protection, to any particular individual citizen." *Hoodbhoy v. District of Columbia*, 282 A.3d 1092, 1097 (D.C. 2022) (citation modified). In any case where the public duty doctrine applies, "a person seeking to hold the District of Columbia liable for negligence must allege and prove that the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public." *Id.* (internal quotation and citation omitted). "Absent a special relationship between the District and an individual, no specific legal duty exists, and . . . a claim of simple negligence will fail as a matter of law." *Woods v. District of Columbia*, 63 A.3d 551, 553 (D.C. 2013) (citation modified). In short, the District "generally may not be held liable for failure to protect individual citizens from harm caused by criminal conduct." *Morgan v. District of Columbia,* 468 A.2d 1306, 1310 (D.C. 1983) (discussing history of the doctrine). Among the many public policy considerations undergirding the public duty doctrine, is "the practical realization that individuals, juries and courts are ill-equipped to judge . . . legislative-executive decisions as to how particular community resources should be or should have been allocated to protect individual members of the public." *Morgan,* 468 A.2d at 1311 (citations and internal quotation marks omitted). Moreover, the Court of Appeals has repeatedly declined to find the District liable for injuries caused by a third party's criminal conduct. *See*

16

*Hoodbhoy*, 282 A.3d at 1101 (finding public duty doctrine barred negligence claim brought by widow based on individual released from Saint Elizabeths killing her husband); *Varner v. District of Columbia*, 891 A.2d 260, 276 (D.C. 2006) (holding that public duty doctrine barred claim against the District related to student's murder at Gallaudet University); *Klahr v. District of Columbia,* 576 A.2d 718 (D.C. 1990) (holding that public duty doctrine barred liability in suit brought by estates of victims allegedly murdered by escapee from halfway house operated by District Government). Here, in regard to the October 29, 2023 incident, Plaintiff claims that "MPD officers responded but failed to arrest the assailant," Compl. ¶ 8, but the officers were under no legal duty to protect Plaintiff or arrest her supposed assailant. *See Warren v. District of Columbia*, 444 A.2d 1, 3 (D.C. 1981).

So too for the July 18, 2025 incident. The public duty doctrine also bars negligence claims based on MPD's alleged failure to properly investigate crimes. *See McGaughey v. District of Columbia*, 684 F.3d 1355, 1358 (D.C. Cir. 2012) ("It is clear under D.C. law that the duty to investigate crime is owed to the public, not to any specific person." (citing *Nichol v. District of Columbia,* 444 A.2d 1, 3 (D.C.1981) (en banc)). To overcome the public duty doctrine and hold the District liable, Plaintiff must allege facts showing a "special relationship" with the District resulting in a duty to her that is greater than, or different from, any duty owed to the general public. *See Klahr*, 576 A.2d at 719 (D.C. 1990) (holding a plaintiff "must allege and prove that [Defendants] owed a special duty to [or had a special relationship with] the injured party, greater than or different from any duty which it owed to the general public"); *Platt v. District of Columbia*, 467 A.2d 149, 152 (D.C. 1983). "The threshold for establishing a special relationship is very high." *Jefferies v. District of Columbia*, 917 F. Supp. 2d 10, 33 (D.D.C. 2013) (citing *Trifax Corp. v. District of Columbia*, 53 F. Supp. 2d 20, 30 (D.D.C. 1999)). Nothing in

Plaintiff's Complaint plausibly shows such a special relationship that would overcome the public duty doctrine here.

*Second*, Plaintiff fails to state a plausible defamation or false light claim. "A statement is 'defamatory' if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990) (citing, among others, *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984)). A plaintiff bringing a defamation claim must show that: (1) the defendant made a false and defamatory statement concerning the plaintiff; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault in publishing the statement amounted to at least negligence; and (4) either the statement was actionable as a matter of law irrespective of special harm or its publication caused the plaintiff special harm. *See Blodgett v. University Club*, 930 A.2d 210, 222 (D.C. 2007). "These elements are similar to those of an invasion of privacy-false light claim, which 'requires a showing of: (1) publicity (2) about a false statement, representation or imputation (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person.'" *Id.* (citing *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 859 (D.C.1999). "[W]here the plaintiff rests both his defamation and false light claims on the same allegations . . . the claims will be analyzed in the same manner." *Id.* at 223. While statements of fact "may be the basis for a defamation claim, a statement of pure opinion cannot." *Rosen v. American Israel Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012). In this case, Plaintiff does not identify any alleged false and defamatory statements made by any District official about Plaintiff or publicity about a false statement concerning Plaintiff. Accordingly, Plaintiff fails to state a plausible defamation or false light claim.

*Third*, Plaintiff fails to state a plausible claim for intentional infliction of emotional distress. To do so, Plaintiff must show: "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff to suffer severe emotional distress." *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013) (citations omitted). Plaintiff does not identify any extreme and outrageous conduct and her pleading does not contain any allegation of severe emotional distress suffered as a result of the October 29, 2023 or July 18, 2025 incidents. *See* Compl.

*Fourth*, Plaintiff fails to state a claim based on violations of the following statutory provisions: D.C. Code § 5-117.03, D.C. Code § 5-113.01, D.C. Code § 2-1402.11, D.C. Code § 12-301, and D.C. Code § 12-309. But D.C. Code § 5-117.03, D.C. Code § 5-113.01, D.C. Code § 12-301, and D.C. Code § 12-309 provide no private right of action and are otherwise inapplicable or unhelpful to Plaintiff. Plaintiff refers to D.C. Code § 5-117.03's title as "False reporting and abuse of authority," but that provision provides that MPD officers are permitted to examine property pledged to pawnbroker, which has no bearing on the alleged facts. D.C. Code § 5-113.01 obliges MPD to keep certain records, including general complaint files. But Plaintiff has not alleged that MPD failed to keep any records. For the October 29, 2023 incident, Plaintiff claims that "[o]fficers falsified reports . . . [by] stating they did not know who assaulted Plaintiff," however public docket entries show that Plaintiff told officers "that the victim's husband had spit on her the previous day" and "review of CCTV footage . . . confirmed and corroborated with the witnesses' statements [that Plaintiff's injury occurred while the victim was defending herself]." Def.'s Ex. 2, Gerstein Affidavit at 1. Therefore, the reports identify the parties involved, contradicting Plaintiff's claim that officers did not know who assaulted Plaintiff. For the July 18, 2025 incident, Plaintiff's claim that "[i]t took two visits and eight

phone calls before MPD took the report" does not show any violation of D.C. Code § 5-113.01, but rather demonstrates that MPD complied with the obligation to keep records. Plaintiff also purports to bring claims under D.C. Code § 12-301 and 12-309, but these provisions address the limitation of time for bringing actions and notice requirements for bringing actions for unliquidated damages against the District.

Finally, D.C. Code § 2-1402.11 outlines prohibited acts of discrimination on the part of employers, employment agencies, and labor organizations under the DCHRA. Plaintiff does not allege that the District was her employer, so she cannot state a claim against the District under the DCHRA's employment provision. Nor does she state any other discrimination claim under the DCHRA. Plaintiffs must "establish that they were discriminated against because of their membership in a protected class." *Morris v. District of Columbia*, 313 A.3d 545, 551 (D.C. 2024) (citation omitted). Plaintiff does not allege membership in a protected class, though she states, in a wholly conclusory manner, that "MPD has shown repeated discriminatory conduct toward Black citizens in Washington, DC." Compl. ¶ 14. Beyond that bald allegation, Plaintiff offers no further allegations connecting her membership in a protected class to any intentional act of discrimination by the District. Accordingly, if the Court considers Plaintiff's DCHRA claim on the merits, she fails to state a plausible claim for relief.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint.

Date: December 5, 2025                    Respectfully submitted,

                                         BRIAN L. SCHWALB
                                         Attorney General for the District of Columbia

                                         CHAD COPELAND
                                         Deputy Attorney General
                                         Civil Litigation Division

/s/ Steven N. Rubenstein
STEVEN N. RUBENSTEIN [1013094]
Chief, Civil Litigation Division Section V

/s/ Madeline Ochi
MADELINE OCHI [90030264]
Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
(202) 741-7657
Madeline.Ochi1@dc.gov

*Counsel for Defendant District of Columbia*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LISA QUEEN, | |
| *Plaintiff*, | Civil Action No. 1:25-cv-03797 (SLS) |
| v. | |
| DISTRICT OF COLUMBIA, | |
| *Defendant*. | |

## <u>ORDER</u>

Upon consideration of the District's Motion to Dismiss the Complaint, any opposition and reply thereto, and the entire record herein, it is by the Court this _____ day of _____, 202__, hereby

**ORDERED** that the District's Motion is **GRANTED**; and it is further

**ORDERED** that the Plaintiff's claims under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the remainder of Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**;

**SO ORDERED.**

_____
Sparkle L. Sooknanan
United States District Judge

CC:    Lisa Queen
*Plaintiff pro se*

Madeline Ochi
Assistant Attorney General
*Counsel for Defendant District of Columbia*